UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

ALBERTA K. HAMMOCK,

                            Plaintiff,

-vs-                                                    Case No.  6:07-cv-795-Orl-31KRS

MICHAEL J. ASTRUE, COMMISSIONER
OF SOCIAL SECURITY,

_____

REPORT AND RECOMMENDATION

## TO THE UNITED STATES DISTRICT COURT

This cause came on for consideration without oral argument on the Complaint filed by Alberta K. Hammock, seeking review of the final decision of the Commissioner of Social Security denying her claim for social security benefits.  Doc. No. 1.  The Commissioner answered the Complaint and filed a certified copy of the record before the Social Security Administration (SSA).  Doc. Nos. 7, 8.

## I.      PROCEDURAL  HISTORY.

In October 2004, Hammock applied for disability benefits under the Federal Old Age, Survivors and Disability Insurance Programs (OASDI), 42 U.S.C. § 401 *et seq.* (sometimes referred to herein as the Act).  She alleged that she became disabled on February 1, 2001.  R. 23, 106.  Hammock's application was denied initially and on reconsideration. R.  33-36, 43-44, 46-47.

Hammock requested a hearing before an administrative law judge (ALJ).  R. 42.  An ALJ held a hearing on April 13, 2006.  Hammock, represented by a non-attorney, testified at the hearing. Natalie Tessari, a vocational expert (VE), also testified.  R. 204-44.

After considering the testimony and the medical evidence presented, the ALJ determined that Hammock was insured under OASDI through September 30, 2005.  R. 23.  The ALJ found that Hammock had not engaged in substantial gainful activity since the alleged onset date of her disability through her date last insured.  R. 25.

The ALJ concluded that the medical evidence showed that Hammock had degenerative disc disease at L1-L2 and L3-L4, which was a severe impairment.  R. 25.  This impairment did not meet or equal any of the impairments listed in the applicable social security regulations (the Listings).[1]  R. 26.

The ALJ also acknowledged that Hammock complained of back pain, obesity, arthritis of the back and knee, a painful skin condition with lesions, and depression.  R. 26.  The ALJ concluded that Hammock's mental impairment resulted in only mild limitations of function.  R. 26.[2]  She also found Hammock's claimed limitations arising from pain and other subjective symptoms were not entirely credible.  R. 28.

The ALJ concluded that Hammock had the residual functional capacity (RFC) to lift/carry 10 pounds frequently and 20 pounds occasionally; to sit for about 6 hours in an 8-

---

[1]  The Code of Federal Regulations "contains a Listing of Impairments specifying almost every sort of medical problem ('impairment') from which a person can suffer, sorted into general categories."  *Shinn ex rel. Shinn v. Comm'r of Soc. Sec.*, 391 F.3d 1276, 1278 (11th Cir. 2004); 20 C.F.R. Part 404, Subpt. P, App. 1.

[2]  Because Hammock does not challenge the finding regarding her mental impairment, I will not review medical evidence regarding mental issues in this Report and Recommendation.

hour workday; to stand/walk for 15 minutes at a time and then sit for the same period due to lesions on her feet; to climb, stoop, crouch, and crawl occasionally.  R. 26.   In reaching this conclusion, the ALJ gave little weight to the opinion of Dr. Taraschi, a treating physician, because he saw Hammock only once in 2003 and once in 2004, and in 2004 Hammock did not complain of a back problem.  R. 29.  The ALJ gave great weight to the opinion of Dr. Cooper, a consulting physician, and considerable weight to the opinions of physicians who reviewed Hammock's medical records.  R. 29.

The ALJ found, after considering the testimony of a VE,  that Hammock could perform her past relevant work as a document finisher, which was light, unskilled work.  R. 30.  Therefore, the ALJ concluded that Hammock was not disabled.  *Id*.

Hammock requested review of the ALJ's decision.  R. 19.  On October 26, 2006, the Appeals Council issued a decision finding no basis to review the ALJ's decision.  R. 15-17.  Hammock timely sought review of this decision by this Court.  R. 6; Doc. No. 1.

## II.    JURISDICTION.

As the plaintiff has exhausted her administrative remedies, the Court has jurisdiction to review the decision of the Commissioner pursuant to 42 U.S.C. § 405(g).

## III.    STATEMENT OF FACTS.

Review of the entire record reflects that the facts are adequately stated in the ALJ's decision and in the parties' memoranda with the exception of additional medical records of treatment by Dr. Taraschi.  Accordingly, I will only summarize the pertinent facts, including the additional treatment records from Dr. Taraschi, to protect Hammock's privacy to the extent possible.

Hammock was 45 years old as of the alleged onset date of her disability.  R. 208.

She graduated from high school.  R. 209.  She was 5'5½" tall and estimated that she

weighed about 313 pounds.  R. 211.

She had past relevant work as a finisher of paper presentation materials.  R. 84,

209.  The work required her to walk constantly and to alternate sitting and standing.  It

required her to lift up to 50 pounds occasionally and 10 to 25 pounds frequently.  R. 84,

209-10. The VE classified this work as a Folding Machine Operator, which required a light

level of exertion and was unskilled work.  R. 235.

The medical records reveal that in November 1999, Hammock complained of back

pain for which she received medication.  R. 191-92.  Hammock next was treated in

February 2002 primarily for a fungal infection (tinca corporis) and dermatitis on her hands

and feet.  R. 186-87.  Medication was also prescribed for flare-up of low back pain.  R.

186.  Hammock returned for follow-up visits in April and May 2002 for her dermatitis, which

showed general improvement.   R. 184-85.

On March 18, 2003, Hammock went to the emergency room complaining of low

back pain radiating to the left leg.  R. 109 -16.  A spinal x-ray revealed degenerative disks

at L1-L2 and L3-L4 and reverse spondylolisthesis[3] at L3-L4.  R. 116, 195.

On March 26, 2003, Hammock sought follow-up treatment for her back pain from

Peter Taraschi, D.O.  R. 120.  She complained of low back pain radiating into her left leg

increased with any movement.  Her weight was 287 pounds.  Dr. Taraschi diagnosed

_____

[3] "Spondylolisthesis is a condition in which a bone (vertebra) in the lower part of the spine slips forward and onto a bone below it."  Medline Plus, Medical Encyclopedia, found online at http://www.nlm.nih.gov/medlineplus/ency/article/001260.htm (last visited July 9, 2008).

Hammock with acute lumbar strain or sprain and prescribed Flexeril, a muscle relaxant. *Id*.

Hammock next saw Dr. Taraschi in March 2004, for complaints of hives and sore feet.  R. 119.  He prescribed allergy medication and an ointment.  There was no reference to her back pain, although she continued to take the medications previously prescribed for it. *Id*.  Hammock saw Dr. Taraschi again on April 19, 2004, for treatment of eczema. The record reflects that Hammock continued to take Flexeril.   R. 118.

Hammock's next visit to Dr. Taraschi was in October 2004 with complaints of eczema and back pain.  R. 117.  Hammock reported severe back pain every day and an inability to work.  Dr. Taraschi noted reduced range of motion in her back with pain.  His diagnoses were lumbar degenerative disk disease, lumbar sprain/strain and eczema.   He prescribed an ointment for eczema, and  Lortab, which is a medication containing acetaminophen and hydrocodone used to treat moderate to moderately severe.  *Id*.; *See* Medline Plus, Acetaminophen and Hydrocodone, found online at http://www.nlm.nih.gov/medlineplus/ druginfo/medmaster/a601006.html (last visited July 9, 2008).

On January 20, 2005, Homi S. Cooper, M.D., performed a consultative examination of Hammock.  R. 121-26.  Hammock's chief complaints were lesions on her feet, low back pain radiating into her left leg, and neck pain.  R. 121.  Her weight was 293, with a Body Mass Index (BMI) of 43.[4]  R.123.  Generally, Hammock had normal range of motion,

---

[4]  BMI is a measurement of body fat based on height and weight. *See Brown v. Barnhart*, 325 F. Supp. 2d 1265, 1271-72 & n. 18 (N.D. Ala. 2004). A BMI that exceeds 40 falls within the category of extreme obesity, which represents "the greatest risk for developing obesity-related impairments."  Soc. Sec. Rul. 02-01p, 2000 WL 628049, at *2.

normal strength and muscle tone and no swelling or deformities.  She did report pain at extremes of flexion and extension of the lumbar spine.  Dr. Cooper also noted positive median nerve compression tests at the wrists, but that her hands and fingers moved normally.  R. 124-25.  She had difficulty walking on her heels and toes due to obesity.  R. 124.  He noted that Hammock also had shortness of breath likely secondary to her obesity.  R. 125.

Dr. Cooper diagnosed Hammock with morbid obesity, degenerative disk disease, and lesions on her feet and chest due to chronic eczematous type disorder and/or chronic fungal infection.  R. 125.  He opined that Hammock would have difficulty standing for prolonged periods of time until the lesions healed.  Specifically, Dr. Cooper opined that Hammock could stand and walk 10 to 15 minutes at a time at a slow pace and then would have to sit for an equal amount of time. After the lesions healed, however, Dr. Cooper noted that Hammock would no longer have that restriction.  Dr. Cooper further opined that Hammock could sit 6 out of 8 hours a day, and lift and carry 5 to10 pounds frequently and 15 to 20 pounds occasionally.  She had significant postural limitations such as bending, stooping, crouching, crawling and climbing secondary to obesity.  *Id*.

In February 2005, Vaduvur Narayan, M.D., prepared a physical RFC assessment after review of Hammock's records.  R. 131-38.  Dr. Narayan's opined that Hammock could lift 20 pounds occasionally and 10 pounds frequently.  She could stand or walk at least 2 hours, alternating sitting with walking or standing, and sit about 6 hours in an 8-hour workday.  R. 132, 138.  She had postural limitations on bending, stooping, crouching, crawling and climbing limited to 1 to 2 times every 2 hours in a 8-hour day.  R. 138.  She would be limited in her ability to reach.  R. 134.

In July 2005, Eric C. Puestow, M.D., prepared a physical RFC assessment after review of Hammock's records. R. 167-74. Dr. Puestow opined that Hammock could lift and carry 20 pounds occasionally and 10 pounds frequently, sit, stand and/or walk about 6 hours in an 8-hour day, occasionally climb ramp/stairs but not ladders, rope or scaffolding, and occasionally stoop, kneel, crouch, and crawl. R. 168-69. She could never engage in activities requiring balancing. R. 169. She further was to avoid concentrated exposure to extreme heat and cold, wetness and humidity. R. 171.

On October 25, 2005, Hammock returned to Dr. Taraschi[5] with complaints of a rash and back pain. R. 176. She had severe eczema of the legs and arms, and tenderness with spasm in the back. Dr. Taraschi prescribed medication. *Id*. Her blood tests were normal except for an elevated white blood cell count. R. 178.

Hammock saw Dr. Taraschi again on March 14, 2006, with increased back pain. R. 175.[6] Dr. Taraschi prescribed the usual medications. *Id*.

X-rays of Hammock's knees taken in April 2006 revealed moderate narrowing of the medial compartment of the right knee with minimal degenerative changes. R. 198. Her left knee had only minimal narrowing of the joint space medially. *Id*.

On April 11, 2006, Dr. Taraschi opined that Hammock suffered from morbid obesity, degenerative disk disease, chronic lumbar pain, and chronic eczema. R. 196. He further stated that she "may be suffering from arthritis in her back and knees." *Id*. He also opined

---

[5] Although the physician's signature is illegible, the Court Transcript Index reflects that Exhibit 9F contain records from Omni Healthcare, which is where Dr. Taraschi worked. *See* R. 196.

[6] *See* n. 5, *supra*.

that she suffered from anxiety and depression. Dr. Taraschi opined that Hammock has been unable to work since 2003, and that her multiple medical conditions would make her unreliable in the workplace, missing work 3 to 4 times per month.  He also indicated that due to chronic pain, fatigue and morbid obesity, she would need to lie down and rest at unpredictable intervals.  He noted that due to Hammock's lack of medical insurance, his treatment options were limited.  *Id.*

During the ALJ's hearing, Hammock testified that she was having trouble concentrating due to problems with her neck, including headaches.  R. 211.  If she tried to reach or stretch, she experienced spasms.  R. 212.  She experienced severe pain if she stood for too long.  R. 212.  She estimated that should could walk 50 to 75 feet without resting due to arthritis in her knees.  R. 212, 219-20.  She had problems with rashes and sores on her feet that made it hurt to wear shoes and socks.  R. 213-14.  She sometimes lost her balance, fell and could not get up.  R. 220-21.

Hammock also testified that she was able to sit comfortably 20 to 30 minutes at a time without her medication, and for one hour with her medication.  She could stand for only 5 to 10 minutes.  R. 221.  She could bend if holding onto something for support. R. 222.  She could lift 3 pounds.  R. 223. She had to lie down 10 to 15 times a day, 30 minutes at a time, to rest.  R. 226-27.

Hammock averred that she was able to perform household chores a little bit at a time with frequent rest breaks.  R. 214-15, 226, 229.  She became short of breath easily with any exertion.  R. 220.  She was chronically fatigued.  R. 226.  She also reported difficulties maintaining her personal hygiene and dressing herself due to pain.  R. 224. She could drive an automobile occasionally.  R. 208.

The ALJ asked the VE to consider an individual with Hammock's education and past relevant work experience who "could perform light work with the additional restrictions of being able to only occasionally climb ramps and stairs, balance, stoop, kneel, crouch and crawl, to never climb ladders, ropes, or scaffolds . . . [t]o avoid concentrated exposure to extreme cold, heat, wetness and humidity." R. 236.  The VE testified that the person could perform Hammock's past work as a  folding machine operator.  R. 236.

The ALJ then asked the VE to assume an individual of the same age and education who could sit for 6 hours out of an 8 hour day, alternate standing and walking for 15 minutes at a time with sitting, lift and carry 10 pounds frequently and 20 pounds occasionally, with only occasional bending, stopping, crouching, crawling, and climbing due to obesity. R. 237.  The VE testified that this hypothetical claimant could perform Hammock's past relevant work.  R. 238.

The ALJ also posed a question limiting the same hypothetical individual to sedentary work, alternating the time she was sitting and standing, and with occasional bending, stooping, crouching, crawling and climbing.  R. 238.  The VE testified that this individual could not perform Hammock's past relevant work, but that there were sedentary positions such as assembler, toy games assembler, surveillance system monitor, and charge account clerk that she could perform and that exist in substantial numbers.  R. 238-39.

In response to questions from Hammock's representative, the VE testified that the hypothetical individual could not perform any work if she needed to lie down at unpredictable times for long periods.  R. 241.  There also would be no work the

hypothetical individual could perform if she had to be absent from work 3 to 4 times a month.  R. 241.

## IV.     STANDARD OF REVIEW.

To be entitled to disability benefits under OASDI, a claimant must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. § 423(d)(1)(A).  A "physical or mental impairment" under the terms of the Act is one "that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques."  42 U.S.C. § 423(d)(3). In a case seeking disability benefits under OASDI, the claimant also must show that he or she became disabled before his or her insured status expired in order to be entitled to disability benefits.  42 U.S.C. § 423(c)(1); *Demandre v. Califano*, 591 F.2d 1088, 1090 (5th Cir. 1979).

Pursuant to 42 U.S.C. § 405(a), the SSA has promulgated a five-step inquiry that must be followed in determining whether a claimant is entitled to benefits.  In sum, an ALJ must apply the following criteria, in sequence:

> (1) Is the claimant presently unemployed?
>
> (2) Is the claimant's impairment severe?
>
> (3) Does the claimant's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1?
>
> (4) Is the claimant unable to perform his or her former occupation?
>
> (5) Is the claimant unable to perform any other work within the economy?

20 C.F.R. § 404.1520(a)(4).  An affirmative answer to any of the above questions leads to either the next question, or, on steps three and five, to a finding of disability.  A negative answer leads to a finding of "not disabled."  *See, e.g.*, *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits."  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)).  However, "the burden temporarily shifts at step five to the Commissioner[,] . . . [who] must produce evidence that there is other work available in significant numbers in the national economy that the claimant has the capacity to perform."  *Id*. at 1278 n.2 (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).

A court's review of a final decision by the SSA is limited to determining whether the ALJ's factual findings are supported by substantial evidence, *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the ALJ applied the correct legal standards, *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

The SSA's findings of fact are conclusive if supported by substantial evidence.  42 U.S.C. § 405(g); *Dyer*, 395 F.3d at 1210.  "Substantial evidence is more than a scintilla, and must do more than create a suspicion of the existence of the fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Walden v. Schweiker*, 672 F.2d 835, 838-39 (11th Cir. 1982)(internal quotations omitted).

The court "must view the record as a whole, taking into account evidence favorable as well as unfavorable to the [SSA's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Where the SSA's decision is supported by substantial evidence, the court will affirm, even if the court finds that the proof preponderates against the decision. *Dyer*, 395 F.3d at 1210. The court may not reweigh the evidence or substitute its own judgment. *Id*.

While there is a presumption in favor of the SSA's findings of fact, no such presumption attaches to the ALJ's legal conclusion about the proper standards to be applied in evaluating claims. *Welch v. Bowen*, 854 F.2d 436, 438 (11th Cir. 1988). Therefore, the court will reverse if the SSA incorrectly applied the law, or if the decision fails to provide the court with sufficient reasoning to determine that the SSA properly applied the law. *Keeton v. Dep't of Health & Human Serv's*, 21 F.3d 1064, 1066 (11th Cir. 1994) (citing *Cornelius v. Sullivan*, 936 F.2d 1143, 1146 (11th Cir. 1991)).

When reviewing a final decision issued by the SSA, the court is authorized to "enter . . . a judgment affirming, modifying, or reversing the decision . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

## V.     ANALYSIS.

Hammock argues that the ALJ made three errors. First, although the ALJ accorded "great weight" to Dr. Cooper's opinion, she failed to adopt his opinion in determining the RFC regarding Hammock's standing, walking and postural limitations. Second, the ALJ erred by according little weight to the opinion of Dr. Taraschi, one of Hammock's treating

physicians.  Finally, the ALJ erred by failing to evaluate properly Hammock's obesity.

These are the only issues I will address.[7]

      *A.     Opinion of Dr. Cooper.*

      Hammock asserts that Dr. Cooper limited her ability to stand or walk to 15 minutes

at a time followed by sitting for the same period.[8] Hammock argues that the limitation to

sitting and standing or walking for equal amounts of time necessarily means that she could

stand or walk only about 4 hours in an 8-hour workday because equal amounts of time

must be spent sitting for every amount of time spent standing or walking. This argument is

consistent with both Dr. Cooper's opinion and that part of the ALJ's RFC assessment

which provides that Hammock would "stand/walk for 15 minutes at a time then sit for the

same period due to lesions of her feet."  R. 26.

      Hammock correctly argues that Social Security Rule 83-10 provides that light work

requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour

workday.  Soc. Sec. Rul. 83-10, 1983 WL 31251.   It appears that the VE determined that

Hammock could perform her past relevant work even with this limitation on alternatively

sitting and standing.  The following is the relevant colloquy:

> Q.     Same hypothetical individual age, education, past
> relevant work, based on Exhibit 3F, the individual can sit for six
> hours out of an 8 hour day, to stand, walk for 15 minutes at a
> time, and they don't have to sit same period.  So she's
> alternating sitting and standing. . . .

---

    [7]  Hammock was cautioned in the Scheduling Order that issues not specifically raised would be waived.  Doc. No. 9 at 2.

    [8]  Dr. Cooper also opined that Hammock could sit "6 out of 8 hours a day."  R. 125.

A [by VE]: Your Honor, you said . . . she had to alternate 15
minutes sitting, standing, standing, walking and then 15
minutes sitting and then sit?  Am I understanding that
correctly?

Q.      She could stand and/or walk for 15 minutes and she'd
have to alternate that with sitting for the same amount of time. .
. .

A.      Every 15 minutes she'd have to change positions.
Correct?

Q.      Well she could sit for six hours.  So she could sit while
working. . . . But it's the standing, walking that will require –

A.      Right.  Okay. . . . Yes, I believe that she could perform
her past relevant work since it's light duty work.  It wouldn't
require anything more than the occasional postural that you
mentioned, and she should be able to stand for 15 minutes at a
time, sit back down.

R. 237.

        This testimony of the VE provides substantial evidence to support the ALJ's finding

that Hammock could return to her past relevant work even with the limitations imposed by

Dr. Cooper's RFC assessment. *Cf.  Miller v. Comm'r of Soc. Sec.*, 241 Fed. Appx. 631, 635

(11th Cir. 2007)(finding that testimony of VE provided substantial evidence at step five of

the SSA sequential evaluation process to establish that there was work claimant could

perform  with an RFC for less than a full range of light duty work).

        Hammock also argues that Dr. Cooper's finding that she would have "significant

postural limitations" indicates limitations that exceeded the ALJ's determination that she

would only be occasionally limited in climbing, stooping, crouching and crawling.  *See*

R. 237.  The SSA defines occasionally to mean "occurring from very little up to one-third of

the time."  Soc. Sec. Rul. 83-10, 1983 WL 31251, at * 5.  Dr. Cooper's opinion indicates

that when he wished to indicate a specific functional limitation he knew how to do that –

such as the limitation to standing or walking 15 minutes at a time then sitting for the same

period.  Dr. Cooper did not indicate that Hammock would be unable to engage in postural

activities.  Therefore, I  find the ALJ's interpretation of Dr. Cooper's opinion to impose

occasional limitations on postural activities to be to be supported by the evidence.

> B.    *Opinion of Dr. Taraschi*.

Hammock contends that the ALJ erred by failing to give great weight to the opinion

of Dr. Taraschi, a treating physician.

> The law of this circuit is clear that the testimony of a treating
> physician must be given substantial or considerable weight
> unless "good cause" is shown to the contrary. . . . . The ALJ
> must clearly articulate the reasons for giving less weight to the
> opinion of a treating physician, and the failure to do so is
> reversible error. . . . We have found "good cause" to exist
> where the doctor's opinion was not bolstered by the evidence,
> or where the evidence supported a contrary finding. . . . We
> have also found good cause where the doctors' opinions were
> conclusory or inconsistent with their own medical records.

*Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)(internal citations omitted).

Dr. Taraschi's opinion was set forth in his April 11, 2006, letter.  He opined that

Hammock suffered from morbid obesity, degenerative disk disease, chronic lumbar pain,

and chronic eczema.  R. 196.  He further stated that she "may be suffering from arthritis in

her back and knees."  *Id*.  He also opined that she suffered from anxiety and depression.

*Id*.  Dr. Taraschi opined that Hammock has been unable to work since 2003, and that her

multiple medical conditions would make her unreliable in the workplace, missing work 3 to

4 times per month.  He also opined that she would need to lie down and rest at

unpredictable intervals due to chronic pain, fatigue and morbid obesity.  *Id*.

The ALJ gave Dr. Taraschi's opinion little weight finding that he only treated her one time in March 2003 for her back pain, and treated her a second time for a skin condition without reference to back pain.  Inexplicably, the ALJ overlooked the record showing that Dr. Tarashi examined Hammock again in October 2004.  At that time, Hammock reported that she was suffering severe back pain every day.  Dr. Tarashi observed upon examination that Hammock had reduced range of motion with pain, for which he prescribed pain medication.[9]  His diagnosis was lumbar degenerative disc disease.

Because the factual finding that Dr. Tarashi treated Hammock only once for complaints of back pain is not supported by the record, the ALJ failed to state good cause to support the decision to give less than controlling weight to Dr. Tarashi's opinion regarding the limitations arising from Hammock's lumbar degenerative disc disease and related back pain.  Accordingly, remand is required to permit the Commissioner to reassess Hammock's condition in light of the record as a whole.

C.    *Obesity and Its Effect on RFC.*

Hammock asserts that the ALJ erred by failing to consider how her morbid obesity limited her RFC as required by Social Security Ruling 02-1p, 2002 WL 628049.   Ruling 02-1p provides in pertinent part as follows:

> [W]e consider obesity to be a medically determinable impairment and remind adjudicators to consider its effects when evaluating disability. . . . [T]he combined effects of obesity with other impairments can be greater than the effects of each of the impairments considered separately. . . . [A]djudicators [should] consider the effects of obesity not only under the listings but also when assessing a claim at other steps of the sequential evaluation process, including when assessing an individual's residual functional capacity.

---

[9]  The record reflects "↓ROM c pain." R. 117.

*Id.* at * 1.

        The ALJ complied with the requirements of Ruling 02-1p in evaluating the effect of

Hammock's obesity on her RFC.  She acknowledged that Hammock stopped working due

to degenerative disc disease, arthritis, pain, depression and obesity.  R. 26.  She accepted

Dr. Cooper's determination that Hammock was morbidly obese.  R. 27.   She also credited

Dr. Cooper's assessment that Hammock's obesity would limit her ability to perform

postural activities, and included that limitation in the RFC assessment as discussed above.

*See* R. 29.  Thus, the record reflects that the ALJ properly considered Hammock's obesity,

and the functional limitations arising therefrom, in combination with all of her other

impairments in reaching the RFC determination.

**VI.     RECOMMENDATION.**

        For the reasons set forth in the foregoing report, I respectfully recommend that the

decision of the Commissioner be **REVERSED** and the case be **REMANDED** for further

proceedings.  I further recommend that after the Court enters its decision on this Report

and Recommendation, it direct the Clerk of Court to enter a judgment and, thereafter, to

close the file.

        Failure to file written objections to the proposed findings and recommendations

contained in this report within ten (10) days from the date of its filing shall bar an aggrieved

party from attacking the factual findings on appeal.

        Recommended in Orlando, Florida on July 9, 2008.

                                                    *Karla R. Spaulding*
                                            KARLA R. SPAULDING
                                        UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Presiding District Judge
Counsel of Record
Unrepresented Party
Courtroom Deputy